# MONTEITH LAW, PLLC

CHARLES E. MONTEITH, JR.
ATTORNEY AT LAW

9121 ANSON WAY, SUITE 200
RALEIGH, NORTH CAROLINA 27615
TELEPHONE NO. (919) 987-1052
FACSIMILE NO. (984) 777-5435
EMAIL: CHARLES@MONTEITHLAWNC.COM



December 27, 2021

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

North Carolina Department of Justice
Melissa A. Lovel
PO Box 629
Raleigh, NC 27602

      *Re:*   *Amanda Little v. North Carolina Department of Justice*
              *21 CVS 19849*

Dear Ms. Lovel:

Enclosed please find a copy of the Complaint, Summons and Civil Action Cover Sheet that were filed on behalf of my client, Amanda Little. Please feel free to contact me should you have any questions.

Sincerely,

*[signature]*

Charles E. Monteith, Jr.


Enclosures (3)

# STATE OF NORTH CAROLINA

Mecklenburg County

File No. _____

In The General Court Of Justice
☐ District ☒ Superior Court Division

**Name And Address Of Plaintiff 1**
Amanda Little
715 N. Church Street, Unit 702
Charlotte, NC 28202

**Name And Address Of Plaintiff 2**

## GENERAL CIVIL ACTION COVER SHEET
☒ INITIAL FILING ☐ SUBSEQUENT FILING

Rule 5(b) of the General Rules of Practice for the Superior and District Courts

**VERSUS**

**Name And Address Of Defendant 1**
North Carolina Department of Justice
Melissa A. Lovell
P.O. Box 629
Raleigh, NC 27602

**Summons Submitted** ☒ Yes ☐ No

**Name And Address Of Defendant 2**

**Summons Submitted** ☐ Yes ☐ No

**Name And Address Of Attorney Or Party, If Not Represented** (complete for initial appearance or change of address)
Charles Monteith
Monteith Law, PLLC
9121 Anson Way, Suite 200
Raleigh, NC 27615

| Telephone No. | Cellular Telephone No. |
|---|---|
| (919) 987-1052 | (919) 624-4196 |

| NC Attorney Bar No. | Attorney Email Address |
|---|---|
| 9368 | charles@monteithlawnc.com |

☒ Initial Appearance in Case ☐ Change of Address

| Name Of Firm | Fax No. |
|---|---|
| Monteith Law, PLLC | (984) 777-5435 |

**Counsel For**
☒ All Plaintiffs ☐ All Defendants ☐ Only: (list party(ies) represented)

☒ Jury Demanded In Pleading ☐ Complex Litigation ☐ Stipulate to Arbitration

## TYPE OF PLEADING

(check all that apply)

☐ Amend (AMND)
☐ Amended Answer/Reply (AMND-Response)
☐ Amended Complaint (AMND)
☐ Assess Costs (COST)
☐ Answer/Reply (ANSW-Response) (see Note)
☐ Change Venue (CHVN)
☒ Complaint (COMP)
☐ Confession Of Judgment (CNFJ)
☐ Consent Order (CONS)
☐ Consolidate (CNSL)
☐ Contempt (CNTP)
☐ Continue (CNTN)
☐ Compel (CMPL)
☐ Counterclaim (CTCL) *Assess Court Costs*
☐ Crossclaim *(list on back)* (CRSS) *Assess Court Costs*
☐ Dismiss (DISM) *Assess Court Costs*
☐ Exempt/Waive Mediation (EXMD)
☐ Extend Statute Of Limitations, Rule 9 (ESOL)
☐ Extend Time For Complaint (EXCO)
☐ Failure To Join Necessary Party (FJNP)

☐ Failure To State A Claim (FASC)
☐ Implementation Of Wage Withholding In Non-IV-D Cases (OTHR)
☐ Improper Venue/Division (IMVN)
☐ Including Attorney's Fees (ATTY)
☐ Intervene (INTR)
☐ Interplead (OTHR)
☐ Lack Of Jurisdiction (Person) (LJPN)
☐ Lack Of Jurisdiction (Subject Matter) (LJSM)
☐ Modification Of Child Support In IV-D Actions (MSUP)
☐ Notice Of Dismissal With Or Without Prejudice (VOLD)
☐ Petition To Sue As Indigent (OTHR)
☐ Rule 12 Motion In Lieu Of Answer (MDLA)
☐ Sanctions (SANC)
☐ Set Aside (OTHR)
☐ Show Cause (SHOW)
☐ Transfer (TRFR)
☐ Third Party Complaint *(list Third Party Defendants on back)* (TPCL)
☐ Vacate/Modify Judgment (VCMD)
☐ Withdraw As Counsel (WDCN)
☐ Other *(specify and list each separately)*

**NOTE:** *All filings in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts, and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must include either a General Civil (AOC-CV-751), Motion (AOC-CV-752), or Court Action (AOC-CV-753) cover sheet.*

AOC-CV-751, Rev. 3/19, © 2019 Administrative Office of the Courts (Over)

| CLAIMS FOR RELIEF | | |
|---|---|---|
| ☐ Administrative Appeal (ADMA) | ☐ Limited Driving Privilege - Out-Of-State Convictions (PLDP) | ☐ Product Liability (PROD) |
| ☐ Appointment Of Receiver (APRC) | | ☐ Real Property (RLPR) |
| ☐ Attachment/Garnishment (ATTC) | ☐ Medical Malpractice (MDML) | ☐ Specific Performance (SPPR) |
| ☐ Claim And Delivery (CLMD) | ☐ Minor Settlement (MSTL) | ☒ Other *(specify and list each separately)* |
| ☐ Collection On Account (ACCT) | ☐ Money Owed (MNYO) | Disability discrimination, sex discrimination and retaliation |
| ☐ Condemnation (CNDM) | ☐ Negligence - Motor Vehicle (MVNG) | |
| ☐ Contract (CNTR) | ☐ Negligence - Other (NEGO) | |
| ☐ Discovery Scheduling Order (DSCH) | ☐ Motor Vehicle Lien G.S. Chapter 44A (MVLN) | |
| ☐ Injunction (INJU) | ☐ Possession Of Personal Property (POPP) | |

Date: 12-10-21

Signature Of Attorney/Party: *[signed]*

**FEES IN G.S. 7A-308 APPLY**
Assert Right Of Access (ARAS)
Substitution Of Trustee (Judicial Foreclosure) (RSOT)
Supplemental Procedures (SUPR)

**PRO HAC VICE FEES APPLY**
Motion For Out-Of-State Attorney To Appear In NC Courts In A Civil Or Criminal Matter (Out-Of-State Attorney/Pro Hac Vice Fee)

| No. | ☐ Additional Plaintiff(s) |
|---|---|
| | |
| | |
| | |
| | |
| | |

| No. | ☐ Additional Defendant(s)   ☐ Third Party Defendant(s) | Summons Submitted |
|---|---|---|
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |

*Plaintiff(s) Against Whom Counterclaim Asserted*

*Defendant(s) Against Whom Crossclaim Asserted*

| STATE OF NORTH CAROLINA | File No. 21 CVS 19849 |
|---|---|
| Mecklenburg County | In The General Court Of Justice<br>☐ District ☒ Superior Court Division |

| Name Of Plaintiff |  |
|---|---|
| Amanda Little | |
| Address | **CIVIL SUMMONS** |
| 715 N. Church Street, Unit 702 | ☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE) |
| City, State, Zip | |
| Charlotte, NC 28202 | |
| **VERSUS** | G.S. 1A-1, Rules 3 and 4 |
| Name Of Defendant(s) | Date Original Summons Issued |
| North Carolina Department of Justice | |
| | Date(s) Subsequent Summons(es) Issued |

**To Each Of The Defendant(s) Named Below:**

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| North Carolina Department of Justice<br>Melissa A. Lovell<br>P.O. Box 629<br>Raleigh, NC 27602 | |

⚠ **IMPORTANT!** You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!

**¡IMPORTANTE!** ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!
Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and
2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff) | Date Issued | Time |
|---|---|---|
| Charles E. Monteith, Jr.<br>Monteith Law, PLLC<br>9121 Anson Way, Suite 200<br>Raleigh, NC 27615 | 10-14-21 | 9:26 ☒ AM ☐ PM |
| | Signature | |
| | ☒ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

| ☐ ENDORSEMENT (ASSESS FEE) | Date Of Endorsement | Time |
|---|---|---|
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | | ☐ AM ☐ PM |
| | Signature | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|
|  |  |  |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|
|  |  |  |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 4/18
© 2018 Administrative Office of the Courts

STATE OF NORTH CAROLINA     IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
COUNTY OF MECKLENBURG     21 CVS 19849

AMANDA LITTLE,

           Plaintiff,

v.

NORTH CAROLINA DEPARTMENT
OF JUSTICE,

           Defendant.

COMPLAINT
(JURY TRIAL DEMANDED)

## I. PARTIES

1) Plaintiff Amanda Little (hereinafter "Plaintiff") is a citizen and resident of Mecklenburg County, North Carolina.

2) Defendant North Carolina Department of Justice (hereinafter "Defendant") is an agency of the State of North Carolina, organized pursuant to North Carolina General Statute (hereinafter N.C.G.S.") § 96-3, and has headquarters in Wake County, North Carolina.

3) Upon information and belief, Defendant employs in excess of seven hundred (700) employees.

## II. JURISDICTION AND VENUE

4) This court has subject matter jurisdiction over this action pursuant to North Carolina General Statute (hereinafter "N.C.G.S.") §§ 7A-240, 7A-243; 42 U.S.C. § 12117 and 42 U.S.C. § 2000e-5(f)(3).

—1—

5) This court has personal jurisdiction over the Defendant in this matter pursuant to N.C.G.S. § 1-75.4 and 42 U.S.C. § 2000e-5(f)(3).

6) Venue is properly laid in this Court pursuant to N.C.G.S. § 1-82 and 42 U.S.C. § 2000e-5(f)(3).

7) Plaintiff initially filed a complaint in this matter on March 5, 2019.

8) On April 15, 2019, Defendant file a notice of removal to the United States District Court for the Eastern District of North Carolina.

9) On December 15, 2020, Plaintiff and Defendant filed a stipulation of dismissal without prejudice.

### III. FACTS

10) Plaintiff began employment with Defendant in March 2004 as an Assistant Attorney General in Defendant's Environmental Division.

11) On or about May 15, 2014, Plaintiff interviewed for an Attorney III position with Defendant's Medicaid Investigation Division.

12) On May 22, 2014, Plaintiff was contacted by Robin Pendergraft, the Senior Deputy Attorney General for the Medicaid Investigation Division. During that conversation, Pendergraft offered Plaintiff an Attorney III position in the Charlotte office of Defendant's Medicaid Investigation Division (hereinafter "MID").

13) On the afternoon of May 22, 2014, Plaintiff accepted the position that was offered to Plaintiff by Pendergraft. Within a few days thereafter, Plaintiff told Pendergraft that Plaintiff had a serious health condition that would require jaw surgery in the future, but that Plaintiff did not have a surgery date at that time. Plaintiff also told Pendergraft that she could be out of work for a considerable amount of time following said surgery.

14) Plaintiff needed surgery because she had been diagnosed with chronic TMJ/TMD and sleep apnea.

15) Plaintiff began working in her new position at Defendant's Charlotte MID office on July 28, 2014. In such position, Plaintiff reported directly to Special Deputy Attorney General Tim Rodgers, the office manager for the Charlotte MID office. Rodgers only directly supervised Plaintiff and the administrative office assistant.

16) Rodgers informed Plaintiff on multiple occasions that he had nothing to do with Plaintiff being hired. Rodgers also told Plaintiff and another investigator in the Charlotte office that he had hoped to hire one of his male friends for Plaintiff's position.

17) From Plaintiff's first day of employment in the Charlotte MID office, Plaintiff noticed that Defendant delayed her training opportunities and assigned Plaintiff to very old cases in contrast to male employees in that same office.

18) In or around November 2015, Plaintiff informed Rodgers that her health conditions had worsened causing her to have frequent bouts of nausea and migraine headaches.

19) In March 2016, Plaintiff was absent from work due to TMJ/TMD and gastrointestinal problems for approximately one week. Following Plaintiff's return to work, Plaintiff learned that Rodgers had told Tracey Durham, Defendant's Employee Relations Manager, that Plaintiff wanted to apply for leave under the FMLA for her absences.

20) Plaintiff informed Rodgers and Tracey Durham that she had available leave time to use and that she wanted to preserve her FMLA leave so that she could use it for her surgery.

21) In or around August 2016, Rodgers presented Plaintiff with a performance evaluation that rated her overall performance as "meets expectations." Even though Plaintiff

—3—
Case 3:22-cv-00029-FDW-DCK   Document 1-1   Filed 01/25/22   Page 8 of 19

received "meets expectations" on the teamwork category in that evaluation, Rodgers alleged that Plaintiff had teamwork issues with two co-workers.

22) Plaintiff told Rodgers that she did not agree with his "teamwork" comment. Rodgers then told Plaintiff that he understood her concerns but that she would have discuss her concerns with Robin Pendergraft.

23) Plaintiff met with Pendergraft on or about August 18, 2016. During this meeting, Plaintiff told Pendergraft that Rodgers had treated female employees differently than he treated male employees. In addition, Plaintiff informed Pendergraft that the Charlotte office was a hostile work environment. Plaintiff further told Pendergraft that Rodgers allowed male employees to take long lunches. Plaintiff also told Pendergraft that Rodgers was more critical of female employees than male employees.

24) Following Plaintiff's return to work after her August 18, 2016 meeting with Pendergraft, Rodgers told Plaintiff that he knew about everything that Plaintiff had said to Pendergraft during that meeting.

25) Rodgers and Defendant thereafter began "targeting" Plaintiff by making random demands regarding Plaintiff's cases, criticizing her work habits and pressuring her to meet arbitrary deadlines and priorities that Rodgers and Defendant set for Plaintiff's cases.

26) Rodgers also began to deny Plaintiff's requests to attend doctors' appointments if Plaintiff did not have sick or vacation leave available. As a result, Plaintiff submitted a request for FMLA leave so that she could go to her doctors' appointments as necessary.

27) In or around October 2016, Plaintiff applied for FMLA leave and informed Tracey Durham that she needed to be able to attend medical appointments. Plaintiff also told Durham that she would need surgery in the future.

28) Plaintiff was approved for intermittent FMLA leave on November 2, 2016.

29) On November 7, 2016, Plaintiff met with Charlie Hobgood, MID's Director, Sarah Harris, a human resources specialist with the North Carolina Office of Human Resources, Robin Pendergraft and Tim Rodgers. During this meeting, Plaintiff informed Pendergraft, Hobgood and Harris that Rodgers allowed male employees to work less hours than Plaintiff. Plaintiff also told Pendergraft, Hobgood and Harris that Rogers provided more assistance to male employees than he provided to Plaintiff and other female employees.

30) On December 29, 2016, Plaintiff learned that her jaw surgery, which had been scheduled for January 3, 2017, would be rescheduled.

31) On or about February 2, 2017, Rodgers yelled at Plaintiff regarding the manner in which Plaintiff recorded her leave. Upon information and belief, several of Plaintiff's co-workers heard Rodgers yell at Plaintiff.

32) On March 15, 2017, Plaintiff was ordered to meet with Rodgers and Randy Pelham, the new civilian investigations supervisor in the Charlotte MID office. Rodgers and Pelham began to yell at Plaintiff and wrongfully accused her of insubordination.

33) On March 29, 2017, Kristen Bierline, Defendant's Human Resources Director, and Sarah Harris met with staff at Defendant's Charlotte MID office. During those interviews, several female staff members told Bierline and Harris that Rodgers and Pelham were creating a hostile work environment for females that worked in the Charlotte MID office.

34) Bierline and Harris also interviewed Plaintiff on March 29, 2017. Plaintiff told them that she was being bullied and harassed by Rodgers on account of her sex, disability and in retaliation for previously reporting such discrimination. Plaintiff also told Bierline and Harris that she was being subjected to a hostile work environment.

35) Plaintiff's surgery was eventually scheduled for April 5, 2017. Plaintiff provided Rodgers with almost two months advance notice of said surgery.

36) On the night of April 3, 2017, Rodgers emailed the entire Charlotte MID office staff and told them that Plaintiff was leaving for an indefinite amount of time. In that same email, Rodgers also stated that there would be a mandatory meeting for all staff at 10:00 a.m. on April 4, 2017.

37) Plaintiff attended the meeting on April 4, 2017 only to learn that only a few individuals were in attendance. Rodgers and Pelham met separately with Plaintiff at the end of that meeting. Once again, Rodgers and Pelham began to yell at Plaintiff. When Plaintiff could no longer tolerate this treatment due to health concerns, she stated that she was out and taking leave under the FMLA. Rodgers responded by accusing Plaintiff of using FMLA leave "like a hall pass."

38) At the end of the meeting, Plaintiff told Rodgers that she needed to complete some administrative work on her computer before she left for the day. Rodgers refused to allow Plaintiff to remain at work and ordered her to get out of the office. When Plaintiff stated she could not use her computer at home to complete her administrative work, Rodgers told Plaintiff to go to a public library.

39) Several of Plaintiff's co-workers overheard Rodgers and Pelham yelling at Plaintiff on April 4, 2017 and later told Plaintiff that they feared for her safety.

40) Plaintiff underwent surgery on April 5, 2017. She initially planned to return to work in May 2017 but was unable to do so. Her physician extended Plaintiff's return to work date until June 15, 2017 and then again until July 5, 2017.

-6-

Case 3:22-cv-00029-FDW-DCK    Document 1-1    Filed 01/25/22    Page 11 of 19

41) In or around early June 2017, Plaintiff asked Tracey Durham and Pendergraft if Plaintiff could possibly return to work part-time or be allowed to work from home if Plaintiff's physician allowed such.

42) On June 13, 2017, Defendant notified Plaintiff that it proposed to separate her from employment on July 5, 2017 due to her unavailability to return to work after all leave credits had been exhausted. Said notice also stated that Defendant needed a full-time employee that could perform the essential functions of Plaintiff's job.

43) On or about July 3, 2017, Plaintiff informed Tracey Durham that she would not be able to return to work on July 5, 2017. Plaintiff also told Durham that Plaintiff's physician had extended Plaintiff's return to work date until October 5, 2017.

44) On July 7, 2017, Defendant separated Plaintiff from employment because the MID allegedly needed to fill Plaintiff's position.

45) On July 26, 2017, Rodgers denied Plaintiff access to her office to collect her personal belongings. Rodgers and Pelham had seized her personal items and refused to allow Plaintiff to inspect those items because they claimed the personal items were state property. Rodgers and Pelham only returned those items in their discretion.

46) On September 1, 2018, Defendant closed the MID office in Charlotte, North Carolina.

47) Defendant did not advertise Plaintiff's position until November 20, 2018. The position was reclassified at a higher salary level and assigned to Defendant's Raleigh MID office.

48) Upon information and belief, as of the date of this Complaint, Defendant has not hired anyone to replace Plaintiff.

—7—
Case 3:22-cv-00029-FDW-DCK   Document 1-1   Filed 01/25/22   Page 12 of 19

## IV. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF: VIOLATION OF TITLE I OF THE ADA

49) Plaintiff incorporates herein the allegations of paragraphs 1-44 of this complaint as if fully set forth herein.

50) On January 2, 2018, Plaintiff filed a charge with the Equal Employment Opportunity Commission (hereinafter "EEOC") alleging that Defendant had discriminated against Plaintiff on account of her disability. In said charge, Plaintiff further alleged that she had been discriminated against on account of her sex and in retaliation for complaining about sex and disability discrimination.

51) On December 6, 2018, Plaintiff received a right to sue letter, dated December 3, 2018, from the EEOC with respect to the charge of discrimination that Plaintiff filed against Defendant.

52) Plaintiff has exhausted all applicable administrative remedies as required by Title VII of the Civil Rights Act of 1964, as amended.

53) Title I of the Americans with Disabilities Act (ADA) prohibits covered employers from discriminating against qualified individuals with a disability during all aspects of employment.

54) At all times relevant to this action, Plaintiff was a person with a disability. Plaintiff had TMJ/TMD and Sleep Apnea. Both conditions substantially limit Plaintiff's ability to perform major life activities including, but not limited to, eating, sleeping and talking. Plaintiff was perceived by Defendant as having such disability.

55) Plaintiff was discriminated against based on a perceived or actual disability in that

Plaintiff was subjected to hostility, increased work scrutiny and arbitrary discipline up to and including forced separation because of Plaintiff's use of medically necessary leave from work. In doing so, Defendant violated the ADA and the Family Medical Leave Act (FMLA).

56) Defendant separated Plaintiff from employment because of her disability in violation of the ADA.

57) Defendant failed to reasonably accommodate Plaintiff by granting her unpaid leave for treatment and recovery from her surgery, a violation of the ADA.

58) Defendant did not offer Plaintiff unpaid leave although it has a policy allowing for such leave. Defendant also did not offer Plaintiff part-time work or the ability to work from home as a reasonable accommodation for her disability. Defendant subjected Plaintiff to different terms, conditions, or privileges of employment because she was a person with a disability.

59) At all times relevant to this action Plaintiff was a "qualified individual with a disability" who was able to perform the essential functions of her job with or without a reasonable accommodation.

60) Defendant's failure to fill the vacancy created by Plaintiff's separation from employment shows that no undue hardship would have resulted from granting Plaintiff a reasonable period of leave for her to recover from surgery.

61) Plaintiff was harmed by Defendant's actions and has suffered damages as a result of Defendant's discriminatory practices.

62) As a result of Defendant's actions, Plaintiff has suffered lost wages, lost employment benefits, mental and emotional distress, the loss of status and reputation, and other economic losses.

63) As a result of Defendant's actions, Plaintiff has suffered damages in an amount in excess of $25,000.00, the exact amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
## SEX DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e-2

64) Plaintiff incorporates herein the allegations of paragraphs 1-59 of this complaint as if fully set forth herein.

65) Throughout the time that Plaintiff worked in Defendant's MID Charlotte office, Tim Rodgers treated Plaintiff differently than male employees. Rodgers and Defendant allowed male employees to attend training sooner than Plaintiff. Rodgers and Defendant also implemented harsher standards in terms of timekeeping or work hours, disciplined Plaintiff for arbitrary alleged misconduct or insubordination, and generally spoke to Plaintiff in a disrespectful and harsh manner – all in contrast to the way Rodgers treated or spoke to male employees.

66) Rodgers allowed male employees to take extra time for lunch without requiring them to take leave. Rodgers also allowed male employees to report for work late and not take leave time. In contrast, Rodgers required Plaintiff to take leave for any time that she was away from the office. Rodgers subjected Plaintiff and other female employees to stricter scrutiny than male employees.

67) Rodgers yelled at Plaintiff and berated her in front of other employees. Rodgers did not yell at or berate male employees.

68) Rodgers allowed Randy Pelham, who was not Plaintiff's supervisor, to yell at Plaintiff.

69) Defendant was aware of prior complaints that asserted Rodgers had a pattern and practice of sex-based discrimination.

70) Because of Plaintiff's sex, she was subjected to a hostile work environment in which she was routinely bullied, belittled, berated and formally disciplined for alleged minor or non-existent infractions for which male employees received no such treatment or discipline.

71) Plaintiff received disparate treatment from that afforded to male employees throughout her employment in terms of work rules, discipline and levels of supervision. She was also discriminated against in the receipt of benefits such as training opportunities and the assignment of cases.

72) Plaintiff was discriminated against because of her sex, in violation of Title VII of the Civil Rights Act, from the time she was hired until she was wrongfully separated from employment on July 7, 2017.

## THIRD CLAIM FOR RELIEF
## RETALAITON IN VIOLATION OF 42 U.S.C. § 2000e-3

73) Plaintiff incorporates herein the allegations of paragraphs 1-68 of this complaint as if fully set forth herein.

74) Plaintiff engaged in protected activity under Title VII of the Civil Rights Act of 1964, as amended, on or about August 18, 2016, when she informed Robin Pendergraft that Tim Rodgers was more critical of Plaintiff and female employees than male employees. Plaintiff also told Pendergraft that Rodgers had bullied and harassed her to cooperate with his "targeting" of another female employee in the Charlotte office.

75) Plaintiff further engaged in protected activity on November 7, 2016 when she told Robin Pendergraft, Charlie Hobgood and Sarah Harris that Rodgers allowed male employees to

work fewer hours than female employees. Plaintiff also told Pendergraft, Hobgood and Harris that Rodgers provided less assistance to female employees than he provided to male employees.

76) Plaintiff also engaged in protected activity on March 29, 2017, when she informed Defendant's Human Resources representatives that Rodgers was harassing Plaintiff because of Plaintiff's sex and subjecting Plaintiff to a hostile work environment by treating her differently than male co-workers, harassing her about her perceived disability and her requests for medical leave.

77) Plaintiff was retaliated against for engaging in protected activity by complaining about the abusive and harassing treatment from MID supervisors, and for refusing to engage in efforts to target another female employee in order to set her up for termination. On every occasion when Plaintiff complained to Defendant that she was being discriminated against because of her sex, disability, or for requesting leave, Plaintiff faced additional scrutiny, additional discipline, additional belittling conduct from Defendant and eventually was forcibly separated from employment by Defendant after a career of more than 18 years of exemplary work performance.

78) Defendant separated Plaintiff from employment in retaliation for Plaintiff's making internal complaints about sex and disability discrimination and a hostile work environment.

79) Defendant acted with malice and willful intent when Defendant separated Plaintiff from employment in retaliation for Plaintiff's complaints of sex and disability discrimination and hostile work environment.

80) As a result of Defendant's actions, Plaintiff has suffered lost wages, lost employment benefits, pain and suffering, mental and emotional distress, the loss of status and reputation, and other economic losses.

81) As a result of Defendant's actions, Plaintiff has suffered damages in an amount in excess of $25,000.00, the exact amount to be proven at trial.

## V. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays the Court:

1) For judgment against Defendant for compensatory damages in a sum in excess of Twenty-Five Thousand Dollars ($25,000.00);

2) For an order requiring Defendant to make whole the Plaintiff by reinstating her to the position of employment she would have enjoyed had Defendant not engaged in unlawful practices, by providing Plaintiff appropriate back pay, front pay, and reimbursement for lost benefits in an amount to be shown at trial, and by granting Plaintiff other appropriate affirmative relief;

3) For recovery of Plaintiff's costs herein, including a reasonable attorney's fee pursuant to 42 U.S.C. § 1988, and prejudgment interest from the date of the filing of this Complaint; and

4) For such other relief to which Plaintiff may be entitled in law or in equity.

This the 10th day of December 2021,

BY: _____
Charles E. Monteith, Jr.
NC State Bar No. 9368
ATTORNEY FOR THE PLAINTIFF
Monteith Law, PLLC
9121 Anson Way, Suite 200
Raleigh, North Carolina 27615